```
IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

```
KA'LAH (KALAH) MARTIN,         )
                               )
          Plaintiff,           )
                               )
     v.                        )    1:21CV906
                               )
GREGORY SEABOLT, et al.,       )
                               )
          Defendants.          )
```

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on Defendant Gregory Seabolt's Motion for Extension of Time (Docket Entry 16 ("Extension Motion")), which Plaintiff opposes (see Docket Entry 17). For the reasons that follow, the Court will grant the Extension Motion and will extend the deadline for Defendant Seabolt to respond to Plaintiff's First Requests for Admission to Defendant Seabolt ("Requests for Admission") to July 5, 2022.

### BACKGROUND

The Extension Motion (which Defendant Seabolt filed on May 27, 2022) "requests an extension of time of thirty (30) days [for Defendant Seabolt] . . . to respond to [the] Requests for Admission . . . ." (Docket Entry 16 at 1; see also id. at 2 (observing that Plaintiff served Requests for Admission on May 5, 2022, and that discovery will not close until August 26, 2022).) As grounds for such relief, the Extension Motion states that "[m]any" of the Requests for Admission – which number "142" – "require substantial

investigation in order for [Defendant] Seabolt to appropriately respond, and thus more time is needed to provide those responses." (Id. at 2; see also id. ("Due to the volume of the [Requests for Admission], counsel for [Defendant] Seabolt requested an extension of time of thirty (30) additional days . . . to serve his responses . . . . Counsel for [Defendant] Seabolt represents that th[e Extension] Motion is made for legitimate purposes, in good faith, and not for purposes of delay.").)  Defendant Seabolt attached to the Extension Motion documentation showing that "Plaintiff has been consulted about th[e Extension] Motion and does not consent to th[e requested] extension."  (Id. (referencing Docket Entry 16-1).)

The Court promptly tolled Defendant Seabolt's time to respond to the Requests for Admission, "pending an expedited opportunity for Plaintiff to respond [to the Extension Motion]" (Text Order dated June 2, 2022), whereafter Plaintiff filed a "Motion to Deny Extension and or in the Alternative Rule 36 Motion to Deem Requests for Admission Admitted" (Docket Entry 17 (the "Opposition Motion") at 1 (standard capitalization applied and bold font omitted)).  In opposing any extension, the Opposition Motion proffers that:

1) "Plaintiff must obtain documentation and answers to move forward in the time frame of the agreed upon deadlines" (id.);

2) "[t]he Requests for Admission were written in two hours . . . and must be admitted under reasonable inquiry by Defendant [] Seabolt under Federal Rule[] of Civil Procedure 36" (id. at 2-3;

-2-

see also id. at 4 (describing Requests for Admission as "well written" and positing that they "entitle Plaintiff to [s]ummary [j]udgment if answered truthfully and honestly"));

3) "Plaintiff wrote the Requests for Admission based off of the public records request that Defendants provided to Plaintiff" (id. at 3 (emphasis omitted));

4) "[n]ot only do [] Defendants have the answer to the questions by providing the information to Plaintiff, but Defendant [] Seabolt has a duty to know the answers to the questions as Sheriff of Randolph County" (id.);

5) "Defendant [] Seabolt was a highway patrol instructor for more than a decade, is on his second term as Sheriff of Randolph County and has held Plaintiff's disciplinary complaint to his department for more than three years" (id.);

6) "[i]nstead of responding to the Requests for Admission in thirty days, [Defendant] Seabolt has spent time campaigning for re-election based off his extensive social media, public, and televised presence" (id.); and

7) "Defendant [] Seabolt served interrogatories to Plaintiff" and "wants to schedule a deposition of Plaintiff before answering the Requests for Admission" (id. at 4; see also id. at 2 (grousing that Defendant Seabolt's Answer "denied every statement of fact" in Plaintiff's Complaint and that "Defendants refused to cooperate"

-3-

when, "on two occasions, [Plaintiff] attempted to open the discussion to mitigating this matter outside of court")).

Based on those assertions, the Opposition Motion argues that "Defendant [] Seabolt does not need more time to answer . . . . [He] quite simply does not want to answer . . . . [Defendant] Seabolt has no legal excuse or good cause for an extension; in fact, asking for the extension evidences the strength of Plaintiff's case." (Id. at 4 (emphasis omitted); see also id. at 3 (accusing Defendant Seabolt of "ha[ving] evidenced his intent to bury the excessive force his Deputies utilized unconstitutionally and unconscionably against Plaintiff by failing to address what happened to Plaintiff outside of court as well as now, in active litigation"), 5 (accusing Defendant Seabolt of "attempt[ing] . . . to dodge what happened to Plaintiff by extending this case, failing to follow the law, [and] failing to address Plaintiff").)

Defendant Seabolt subsequently replied, noting that "Plaintiff served [the R]equests [for Admission] . . . only hours after [Defendant Seabolt's counsel] was abruptly hospitalized and placed on bed rest for the ensuing several days. In spite of this, [Defendant Seabolt's counsel] reviewed . . . [the Requests for Admission] on [the day of service] and promptly provided them to [Defendant] Seabolt for review." (Docket Entry 18 (the "Reply") at 4.) Moreover, according to the Reply, "[s]ince that time, [Defendant Seabolt's] counsel, [Defendant] Seabolt, and

-4-

representatives of the Randolph County Sheriff's Office have worked together to prepare responses. . . . . [Defendant] Seabolt and his counsel simply require some additional time to adequately respond . . . ." (Id.; see also id. at 4 n.2 ("Defendant [Seabolt] is diligently attempting to gather the information [Plaintiff] has requested in [the Requests for Admission], and Defendant[ Seabolt's] counsel can confirm that this process is well underway and responses are in the process of being drafted.").)[1]

## DISCUSSION

Parties generally may take 30 days to respond to admission requests, but they may stipulate to a longer period and the Court may extend the period. See Fed. R. Civ. P. 36(a)(3); see also Fed. R. Civ. P. 6(b)(1) ("When an act may or must be done within a specified time, the [C]ourt may, for good cause, extend the time

---

[1] The Reply also cogently highlights the fatal flaws in the Opposition Motion's alternative plea for "this Honorable Court to deem all [the Requests for Admission] admitted under Rule 36 of the Federal Rules of Civil Procedure" (Docket Entry 17 at 1):

> Plaintiff's request that [the Requests for Admission] now be deemed admitted should be denied as premature. [The Requests for Admission] were served on May 5, 2022. Given the intervening weekend, the deadline for responses, without extension, [wa]s . . . June 6, 2022. Thus, Plaintiff's request was premature at the time she filed her Opposition [Motion] (on Sunday, June 5, 2022), as well as at the time of th[e filing of the] Reply [on June 6, 2022]. Her request is made further premature by the Court's order tolling the time for [Defendant] Seabolt to serve his responses.

(Docket Entry 18 at 2-3 (internal citation omitted).)

. . . if the [C]ourt acts, or if a request is made, before the original time or its extension expires . . . ."). The North Carolina Rules of Professional Conduct – which this Court has adopted as its own "Code of Professional Responsibility," M.D.N.C. LR 83.10e(b) – further direct that, "[a]s professional colleagues, lawyers should . . . foster civility among members of the bar by acceding to reasonable requests that do not prejudice the interests of the client . . . ." N.C. R. Prof'l Conduct 0.1(13); see also id. ("Although a matter is hotly contested by the parties, a lawyer should treat opposing counsel with courtesy and respect.  The legal dispute of the client must never become the lawyer's personal dispute with opposing counsel.  A lawyer, moreover, should provide zealous but honorable representation without resorting to unfair or offensive tactics.  The legal system provides a civilized mechanism for resolving disputes, but only if the lawyers themselves behave with dignity."). Additionally, "[b]y Local Rule, this Court has directed 'counsel . . . to cooperate and be courteous with each other in all phases of the discovery process.'" Kinetic Concepts, Inc. v. ConvaTec Inc., 268 F.R.D. 226, 242 (M.D.N.C. 2010) (emphasis omitted) (quoting M.D.N.C. LR 26.1(b)(1)).  This Local Rule (like all others) "shall be interpreted and applied to foster civility in the practice of law before this Court . . . ." M.D.N.C. LR 1.1.

The Federal Rules of Civil Procedure coordinately impose on parties and their counsel "an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37 [of the Federal Rules of Civil Procedure]." Fed. R. Civ. P. 26 advisory comm.'s notes, 1983 amend., subdiv. (g). "[T]he spirit of th[ose] rules is violated when advocates attempt to use discovery tools as tactical weapons . . . ." Fed. R. Civ. P. 26 advisory comm.'s notes, 1983 amend. For example, "[i]f [a party's] counsel believes that [an opposing party has not met its litigation obligations], h[er] remedy is to file a [m]otion [seeking relief]. [Sh]e may not retaliate . . . ." Jayne H. Lee, Inc. v. Flagstaff Indus. Corp., 173 F.R.D. 651, 657 (D. Md. 1997) (internal footnote omitted).

"Despite the[se] unambiguous dictates . . . that require attorneys to conduct discovery in a cooperative fashion, courts continue to find that 'hardball discovery is still a problem in some cases.'" Kinetic Concepts, 268 F.R.D. at 243 (internal brackets and ellipses omitted) (quoting Network Computing Servs. Corp. v. Cisco Sys., Inc., 223 F.R.D. 392, 395 (D.S.C. 2004)). Such behavior "is costly to our system and consumes an inordinate amount of judicial resources." Network Computing, 223 F.R.D. at 395.

In this case, Plaintiff has failed to show any valid ground for the Court to question the representations by Defendant

-7-

Seabolt's counsel, as an officer of the Court, that he and Defendant Seabolt promptly began performing the tasks necessary to respond to the Requests for Admission, but need more time to complete that work.[2] Nor (unsurprisingly, given the length of time left in the discovery period) can Plaintiff show any prejudice that would result from the requested extension.[3]

---

[2] The reported rapidity with which Plaintiff's counsel drafted the (142) Requests for Admission sheds no meaningful light on the length of time Defendant Seabolt and his counsel reasonably might require to investigate such a lengthy list of admission requests and to formulate appropriate responses; indeed, hastily drafted admission requests may demand more study and expenditure of more time to "state in detail why the answering party cannot truthfully admit or deny [them]," Fed. R. Civ. P. 36(a)(4). Likewise, neither any asserted connection between the Requests for Admission and public records received from Defendants nor the belief of Plaintiff's counsel that Defendant Seabolt must admit all (or nearly all) of the Requests for Admission renders the Extension Motion unreasonable (at least not on the record before the Court, which does not include the Requests for Admission, the public records that purportedly informed them, or any other evidence establishing their conclusive undeniability). The absence of such material also precludes the Court from concluding that, without need for any significant investigation and/or guidance from his counsel, Defendant Seabolt (A) "ha[d] a duty to know the answers to the [Requests for Admission] as Sheriff of Randolph County" (Docket Entry 17 at 3; see also id. (emphasizing length of Defendant Seabolt's service as Sheriff and of access to "Plaintiff's disciplinary complaint")) and/or (B) should have answered more quickly due to his prior experience as "a highway patrol inspector" (id.). Lastly (in this vein), the Court rejects Plaintiff's suggestion that a party's devotion of time to election activity and/or service of discovery requests disentitles that party from receipt of extensions to respond to discovery requests.

[3] Of particular note on this front, as the Reply documents, plenty of time remains between July 5 and August 26, 2022, for Plaintiff to complete her planned discovery, given that "she has confirmed that she, herself, intends to depose only [Defendant] Seabolt" (Docket Entry 18 at 5 (referencing Docket Entry 16-1 at 2)). Moreover, because the discovery period will continue until
(continued...)

Furthermore, the Court regularly receives similar extension requests and the undersigned can only recall one or two occasions in more than a dozen years of handling such matters when an attorney opposed a first 30-day extension of time to respond to written discovery requests. Consistent with that experience, other courts have deemed motions of this sort routine and unworthy of contest. See Martin Eng'g Co. v. CVP Grp., Inc., No. 06C4687, 2006 WL 3541777, at *1-2 (N.D. Ill. Dec. 7, 2006) (unpublished) (citing judicial condemnations of "practice of refusing reasonable requests for extensions of time" and ruling that the defendant's extension "request was reasonable, [but] the plaintiff's response (and ensuing written objection) quite the opposite [because it] needlessly required the expenditure of time that could have been more profitably utilized"); Scotch Game Call Co. v. Lucky Strike Bait Works, Ltd., 148 F.R.D. 65, 66 (W.D.N.Y. 1993) ("As is not unusual in this district, [the d]efendant was unable to respond to the discovery requests within the time allowed under the rules."); Freshman, Mulvaney, Comsky, Kahan & Deutsch v. Superior Ct., 218 Cal. Rptr. 533, 541 (Cal. Ct. App. 1985) ("Lengthy requests for

---

3(...continued)
August 26, 2022, regardless of how the Court rules on the Extension Motion, denying the Extension Motion will not expedite the conclusion of this case and granting the Extension Motion will not delay the conclusion of this case. (See generally id. at 2 ("[T]he [Extension] Motion does not seek to modify the scheduling order, nor was it brought pursuant to Rule 16 of the Federal Rules of Civil Procedure.").)

-9-

admission and/or interrogatories quite often require requests for extension of time to respond . . . and such reasonable requests for extension of time should be freely granted by counsel . . . ."); see also Ahanchian v. Xenon Pictures, Inc., 624 F.3d 1253, 1259 (9th Cir. 2010) (ruling that, under Federal Rule of Civil Procedure 6(b), "requests for extensions of time made before the applicable deadline has passed should 'normally be granted in the absence of bad faith on the part of the party seeking relief or prejudice to the adverse party'" (internal ellipsis omitted) (quoting 4B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1165 (3d ed. 2004))).[4]

Finally, comments by Plaintiff's counsel in her e-mail to Defendant Seabolt's counsel declining consent indicate that Plaintiff's counsel recognized that a good-faith basis exists for the requested extension. (See, e.g., Docket Entry 16-1 at 2 ("I understand if you need to file a motion for an extension."), 3 ("I'm sorry I can't grant the extension, I truly am.").) In light of those comments, the Court declines to credit the Opposition

---

[4] In fact, courts have sanctioned attorneys for unwarranted opposition to reasonable extension requests. See, e.g., Scotch Game, 148 F.R.D. at 67-68 (explaining rationale for sanctions under 28 U.S.C. § 1927 as follows: "There can be no serious question that [the p]laintiff's attorneys' conduct here unreasonably multiplied the proceedings and was in bad faith. [The p]laintiff's counsel refused what the record shows to be a reasonable request for an extension of time, forced opposing counsel to file a motion for an extension, . . . and forced the court to rule on an unnecessary motion. Such conduct cannot be condoned.").

Motion's suggestion that Defendant Seabolt and his counsel filed the Extension Motion not to achieve a legitimate purpose (i.e., to obtain the time reasonably needed to investigate and to respond), but rather to further illegitimate ends (see Docket Entry 17 at 4 ("Defendant Seabolt quite simply does not want to answer . . . ." (emphasis omitted)), 5 (asserting that Defendant Seabolt wishes to "extend[] this case" in order "to dodge what happened to Plaintiff").[5]

---

[5] Put another way, if Plaintiff's counsel honestly believed the above-recounted serious charge(s) in the Opposition Motion, which (if true) would reflect professional misconduct by Defendant Seabolt's counsel, see, e.g., N.C. R. Prof'l Conduct 3.2, cmt. ("Dilatory practices bring the administration of justice into disrepute. . . . Nor will the failure to expedite be reasonable if done for the purpose of frustrating an opposing party's attempt to obtain rightful redress . . . . The question is whether a competent lawyer acting in good faith would regard the course of action as having some substantial purpose other than delay."), and would warrant sanctions, see, e.g., Fed. R. Civ. P. 11(b) ("By presenting to the court a . . . written motion . . . an attorney . . . certifies that . . . it is not being presented for any improper purpose, such as to . . . cause unnecessary delay . . . .") & (c)(1) ("If, after notice and a reasonable opportunity to respond, the court determines that [Federal] Rule [of Civil Procedure] 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."), how could Plaintiff's counsel "understand if [Defendant Seabolt's counsel] need[ed] to file a motion for an extension" (Docket Entry 16-1 at 2) and/or why would Plaintiff's counsel feel "sorry [she] can't grant the extension" (id. at 3)? Plaintiff also has not explained how a 30-day extension of Defendant Seabolt's deadline to respond to the Requests for Admission would promote a supposed objective of never responding. (See Docket Entry 17 at 4-5.) If granted the requested extension, Defendant Seabolt still must respond to the Requests for Admission (or must suffer the consequence of having them deemed admitted, see Fed. R. Civ. P. 36(a)(3)).

Ultimately, the record strongly indicates that Plaintiff and her counsel chose to oppose the Extension Motion out of frustration that Defendant Seabolt has not acceded to Plaintiff's demand for compensation. (See, e.g., Docket Entry 16-1 at 2-3 ("[Plaintiff] was very angry about the need for the extensions regarding the [Requests for Admission]. . . . [W]e are offering the chance for this case to not explode to its full potential with th[is] demand. . . . [Plaintiff] wants this case to be over . . . . However, she and I have a lot of fight in us."); Docket Entry 17 at 2 ("Plaintiff granted an extension to answering Plaintiff's Complaint, where Defendant(s) denied every statement of fact shortly before the extended deadline to answer. Plaintiff's counsel set an extended discovery plan upon [d]efense [c]ounsels [sic] request. Plaintiff's attorney has, on two occasions, attempted to open the discussion to mitigating this matter outside of court, where Defendants refused to cooperate in any discussion. When Defendant[ Seabolt] asked for an extension to answer [the] Requests for Admission, Plaintiff could no longer extend."), 5 ("For three years, Plaintiff has been fighting to be heard, fighting for answers, and fighting for accountability. Every attempt of Defendant Seabolt to dodge what happened to Plaintiff by extending this case, failing to follow the law, [and] failing to address Plaintiff, harms Plaintiff.").)

If Plaintiff possesses a good-faith grievance regarding Defendant Seabolt's litigation conduct, Plaintiff and her counsel retain the right to proper recourse in this Court; however, they hold no right to engage in self-help retaliation by refusing a timely, modest extension request, much less any right to lodge unsubstantiated allegations that Defendant Seabolt and his counsel brought the Extension Motion for an improper purpose. See, e.g., Jayne H. Lee, Inc., 173 F.R.D. at 657 ("If [a party's] counsel believes that [the opposing side has not met its litigation obligations], h[er] remedy is to file a [m]otion [seeking relief]. [Sh]e may not retaliate . . . ." (internal footnote omitted)). To the contrary: "[Counsel] are expected to treat one another with civility, especially in the public environs of the court." McBrayer v. Living Ctrs.-Se., Inc., No. 4:98CV199, 1999 WL 33315673, at *2 (W.D.N.C. Apr. 30, 1999) (unpublished) (cautioning attorney against reliance on "conclusory allegation[s]" of "continued misconduct" by opposing counsel and describing such "[s]ubjective speculation in public documents [a]s a dangerous thing which does nothing to increase public confidence in the legal profession"). Accordingly, the Court encourages the parties and their counsel to make a fresh start and to find a way to avoid future disputes of this type and tenor. See Marcangelo v. Boardwalk Regency, 47 F.3d 88, 90 (3d Cir. 1995) ("The extension of normal courtesies and exercise of civility expedite litigation and
-13-

are of substantial benefit to the administration of justice."); see also McBrayer, 1999 WL 33315673, at *1 ("If attorneys work together, critics of the legal profession who argue that civility is no longer present in civil law can be silenced.").

CONCLUSION

Good cause exists for Defendant Seabolt's requested extension of his deadline to respond to the Requests for Admission.

**IT IS THEREFORE ORDERED** that (A) the Extension Motion (Docket Entry 16) is **GRANTED**, (B) the Opposition Motion (Docket Entry 17) is **DENIED**, and (C) Defendant Seabolt shall serve his responses to the Requests for Admission by July 5, 2022.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**
June 14, 2022