**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

KA'LAH (KALAH) MARTIN,           )
                                 )
                Plaintiff,       )
                                 )
        v.                       )        1:21cv906
                                 )
GREGORY SEABOLT, et al.,         )
                                 )
                Defendants.      )

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on "Plai[nt]iff's Motion Under Rule 60 Rel[ie]f From Order Motion to Amend and Correct Judgment[]" (Docket Entry 39 (the "Motion") at 1 (emphasis and all-cap font omitted)).[1] For the reasons that follow, the Court will deny the Motion.[2]

## BACKGROUND

Alleging state and federal claims related to an incident on February 28, 2019, Ka'lah (Kalah) Martin (the "Plaintiff") sued various employees of the Randolph County Sheriff's Office. (See, e.g., Docket Entry 1 (the "Complaint"), ¶¶ 2-4, 32.) Filed November 23, 2021, the Complaint includes "Defendant John Doe A," identified as a "deputy with the Randolph County Sheriff's

_____

1  Docket Entry page citations utilize the CM/ECF footer's pagination.

2  Pursuant to the parties' consent, United States District Judge Loretta C. Biggs referred this case to the undersigned United States Magistrate Judge for all proceedings. (See Docket Entry 15 at 1.)

[Office]" who "goes by the last name[] 'Williams'" (id., ¶ 16), and "Defendant John Doe B," another "deputy with the Randolph County Sheriff's [Office]" who "goes by the last name[] 'Shawver Jr.'" (id., ¶ 17).  On November 30, 2021, Plaintiff obtained summonses for "Sheriff Gregory Seabolt," "Steven Myers," "Edward Slafky," "Travis Short," "Kyle Gabby," "Travis Cox," "Jeremiah Harrelson," "Eric Weaver," and "Steve Shawver Sr" (collectively, the "Named Defendants"), but not John Doe A and John Doe B, Deputies Williams and Shawver, Jr. (collectively, the "John Doe Defendants"). (Docket Entry 3 at 1-9 (all-cap font omitted).)  On December 22, 2021, counsel appeared "on behalf of all Defendants" (Docket Entry 5 at 1) and accepted service of the summonses and Complaint on behalf of Named Defendants (Docket Entry 6 at 1).

On February 28, 2022, Plaintiff and Named Defendants submitted a Joint Report under Rule 26(f) of the Federal Rules of Civil Procedure (the "Rules").  (See Docket Entry 13 (the "Rule 26(f) Report") at 1.)  The Rule 26(f) Report proposed a deadline of March 25, 2022, for "request[ing] leave to join additional parties or to amend pleadings" (id. at 2) and a deadline of August 26, 2022, for completion of all discovery (id. at 3).  The Rule 26(f) Report further specified that "[t]he 'commencement date' of discovery will begin immediately upon the submission of th[e Rule 26(f) R]eport" (id. at 2).  The Court adopted the Rule 26(f) Report the following day, establishing the requested amendment and discovery deadlines.

2

(Text Order dated Mar. 1, 2022 (the "Scheduling Order").) On May 5, 2022, Plaintiff served "her first set of written discovery in this discovery period," consisting of 142 individually numbered Requests for Admission. (Docket Entry 16 at 2; see generally Docket Entry 17 (contesting extension request without disputing description of discovery).) Thereafter, Plaintiff moved to amend her Complaint, solely to remove redactions relating to defense counsel's contact information on Exhibit 1 to the Complaint. (See Docket Entry 23 at 3-7.) On July 26, 2022, Plaintiff deposed Sheriff Seabolt. (See, e.g., Docket Entry 41-5 at 1-2.) The next day, Plaintiff moved to dismiss without prejudice her individual-capacity claims against defendant Eric Weaver (see Docket Entry 24), an unopposed motion (see Docket Entry 25), which the Court promptly granted (see Text Order dated July 28, 2022). On August 10, 2022, the parties moved for a brief extension of the mediation and dispositive motions deadlines (see Docket Entry 26 at 1-2), which the Court granted (see Text Order dated Aug. 12, 2022).

On October 11, 2022, various Defendants "move[d] for summary judgment on all claims asserted in Plaintiff['s operative] Complaint." (Docket Entry 30 (the "Summary Judgment Motion") at 1 (emphasis added).) Plaintiff opposed the Summary Judgment Motion, but did not file her own motion for summary judgment. (See Docket Entries dated Aug. 12, 2022, to Apr. 25, 2023.) On April 25, 2023, the Court granted in part the Summary Judgment Motion, allowing

only Plaintiff's state law assault and battery and Section 1983 excessive force claims against defendants Gabby, Harrelson, and Short (the "Remaining Defendants") in their individual capacities to proceed. (See, e.g., Docket Entry 35 (the "Opinion") at 67; see also id. at 68 (explaining that, "as to all other claims and all other Defendants, the Court will enter summary judgment against Plaintiff").) On May 24, 2023, Remaining Defendants filed a notice of appeal from the Opinion's denial of summary judgment as to the surviving individual-capacity claims. (See Docket Entry 36 at 1.) Remaining Defendants base this interlocutory appeal upon their alleged entitlement to qualified and public official immunity as to those claims. See, e.g., Martin v. Short, No. 23-1588, Docket Entry 15 at 8-40 (4th Cir. Sept. 6, 2023). On July 22, 2023, Plaintiff filed the Motion, seeking, pursuant to Rule 60, to undo the Opinion's dismissal of John Doe Defendants and all official-capacity claims, including specifically certain claims against Gabby, as well as the Opinion's alleged sealing. (See Docket Entry 39 at 1-2.) Various Defendants filed a response in opposition to the Motion (Docket Entry 42) (the "Opposition"), to which Plaintiff failed to reply (see Docket Entries dated Aug. 7, 2023, to present).

4

## DISCUSSION

## I. Preliminary Matters

"Generally, the filing of a notice of appeal, including an interlocutory appeal, confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal." Cornelius v. City of Columbia, No. CA 3:08-2508, 2010 WL 1258012, at *2 (D.S.C. Feb. 24, 2010) (internal quotation marks omitted), recommendation adopted in pertinent part, 2010 WL 1258009 (D.S.C. Mar. 26, 2010), aff'd, 428 F. App'x 252 (4th Cir. 2011). Given that the Motion involves matters analytically distinct from the appropriateness of qualified and public official immunity for Remaining Defendants on Plaintiff's Section 1983 excessive force and assault and battery claims, the interlocutory appeal does not divest the Court of jurisdiction over Plaintiff's Motion. See Crutchfield v. United States Army Corps of Eng'rs, 230 F. Supp. 2d 673, 680 (E.D. Va. 2002) (concluding that district court retained jurisdiction over motion seeking injunctive relief where, "in considering the request for injunctive relief[,] th[e c]ourt will consider issues different, in procedure and substance, from those on appeal to the [United States Court of Appeals for the] Fourth Circuit").

In any event, a "district court retains jurisdiction over matters in aid of the appeal," including considering a motion under Rule 60(b). Fobian v. Storage Tech. Corp., 164 F.3d 887, 890 (4th

5

Cir. 1999) (internal quotation marks omitted). Plaintiff purports to bring the Motion primarily under Rule 60(b) (see generally Docket Entries 39, 41), which provides that, "[o]n motion and just terms, the [C]ourt may relieve a party or its legal representative from a _final_ judgment, order, or proceeding for [certain specified] reasons," Fed. R. Civ. P. 60(b) (emphasis added). Notably, though, the Opinion constitutes an interlocutory order rather than a final judgment. See Fed. R. Civ. P. 54(b) (providing that "any order . . . that adjudicates fewer than all the claims . . . does not end the action as to any of the claims or parties" unless issuing court expressly directs entry of final judgment). Accordingly, Plaintiff's Motion "[can]not be treated under Rule[] 60 . . ., as th[at R]ule[] appl[ies] only to final judgments." Fayetteville Invs. v. Commercial Builders, Inc., 936 F.2d 1462, 1472 (4th Cir. 1991).

"Under Rule 54(b), a district court retains the power to reconsider and modify its interlocutory judgments at any time prior to final judgment when such is warranted." U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC, 899 F.3d 236, 256 (4th Cir. 2018) (ellipsis and internal quotation marks omitted). Although a district court possesses more flexibility to reconsider an interlocutory order than a final judgment, "the discretion afforded by Rule 54(b) is not limitless, and [the Fourth Circuit] ha[s] cabined revision pursuant to Rule 54(b) by treating interlocutory

6

rulings as law of the case." Id. at 256-57 (internal quotation marks omitted). "This is because, while Rule 54(b) gives a district court discretion to revisit earlier rulings in the same case, such discretion is subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." Id. at 257 (internal quotation marks omitted).

Thus, "a [district] court should only reconsider and revise an earlier ruling in three narrow circumstances: (1) if the trial produces substantially different evidence; (2) if there is a change in applicable law; or (3) when the [district] court has committed a clear error resulting in a manifest injustice." Bethany Boardwalk Grp. LLC v. Everest Sec. Ins. Co., No. 20-2319, 2022 WL 12324609, at *6 (4th Cir. Oct. 21, 2022); accord U.S. Tobacco Coop., 899 F.3d at 257. "Of importance, a motion to reconsider is not an opportunity for a losing party to present evidence that it could have presented before the adverse ruling. And it is not sufficient for a party to show that legal precedent could support an alternative resolution." Bethany Boardwalk, 2022 WL 12324609, at *6 (citation omitted). In this regard, "[a] prior decision does not qualify for th[e] third exception by being just maybe or probably wrong; it must strike [the reviewing court] as wrong with the force of a five-week-old, unrefrigerated dead fish. It must be dead wrong." TFWS, Inc. v. Franchot, 572 F.3d 186, 194 (4th Cir.

2009) (citation, ellipsis, and internal quotation marks omitted).
Accordingly, a movant under Rule 54(b) bears a "high burden of
showing that [the challenged ruling] was clearly erroneous and
would work a manifest injustice."  Id.

## II. Analysis

Construed very liberally, the Motion asserts that (1) the
Court improperly sealed the Opinion, (2) newly discovered evidence
— in particular, an unrelated 2021 traffic stop involving a
civilian named Justin Collins and an alleged employee roster —
warrants reconsideration, (3) manifest injustice would result if
the "elected Sheriff and sworn Deputies in Randolph County [could]
continuously escape accountability" (Docket Entry 41 at 15), and
(4) the Court erred in dismissing John Doe Defendants.  (See
generally Docket Entry 41.)  These contentions miss the mark.

To begin, Plaintiff failed to reply to the Opposition.  (See
Docket Entries dated Aug. 7, 2023, to present.)  The Opposition
advances multiple arguments for denial of the Motion, including
that many of the challenged official-capacity claims against Gabby
fail as duplicative; that the purported new evidence does not
impact resolution of Plaintiff's claims; that no video of the stop
of Plaintiff exists; that, given the Opinion does not "even mention
the lack of video," it remains "unclear how lack of video prevented
Plaintiff from presenting her case" (Docket Entry 42 at 9); and
that "Plaintiff is incorrect in stating that the Court's [Opinion]

8

is 'sealed'" (id. at 9 n.1). (See id. at 3-10.) By failing to address the Opposition's arguments, Plaintiff concedes them, warranting denial of the Motion on this basis alone. See, e.g., Kinetic Concepts, Inc. v. Convatec Inc., No. 1:08cv918, 2010 WL 1667285, at *6-9 (M.D.N.C. Apr. 23, 2010) (examining implications of such failure, noting existence of "general principle that a party who fails to address an issue has conceded the issue," and collecting cases). Further, as the Opposition correctly notes, the Court did not seal the Opinion. (See generally Docket Entry 35.) Accordingly, Plaintiff's contention that the Court erred in sealing the Opinion (see Docket Entry 41 at 17-18) lacks merit.

In addition, Plaintiff does not establish when she discovered the proffered evidence. (See Docket Entries 39, 41 to 41-12.) None of the exhibits shed light on this question (see Docket Entries 41-1 to 41-12) and Plaintiff's supporting memorandum likewise fails to identify when such discovery occurred (see, e.g., Docket Entry 41 at 16 (arguing that, "[h]ad a cosmic chain of events not occurred: [Plaintiff] did not find [Plaintiff's counsel,] Dant, Dant did not have to start a firm as a new lawyer in two months ending in the delay of filing [Plaintiff's] case, had Dant not had to fight her former employer to turn over access to her former email, (still denied, evidence otherwise obtained), which ended in the Summary Judgment delay, Collins may not have found Dant in time to give this [C]ourt the ability to relief

9

Judgment [sic] from the evidence Collins provided," without providing dates or any ascertainable timeline of referenced events); see generally Docket Entry 41).[3] Thus, Plaintiff fails to justify relief on the grounds of newly discovered evidence. See Bethany Boardwalk, 2022 WL 12324609, at *6 ("Of importance, a motion to reconsider is not an opportunity for a losing party to present evidence that it could have presented before the adverse ruling.").

Even setting aside that deficiency, however, the proffered evidence does not support Plaintiff's contentions. According to Plaintiff, the fact that Gabby's patrol car contained video cameras when he conducted a traffic stop of Collins in February 2021 proves that the defense lied when it said that no video of Plaintiff's stop in February 2019 exists. (See Docket Entry 41 at 3-7.) Put simply, the fact that, while on interdiction duty in 2021, Gabby's patrol vehicle contained video cameras (see, e.g., Docket Entry 41-1 at 1-2) does not contradict Sheriff Seabolt's sworn statement (1) that "[t]here is no camera footage of [Plaintiff's] February 28, 2019, traffic stop" (Docket Entry 41-3, ¶ 5); (2) that, "[i]n 2019, the Randolph County Sheriff's Office patrol cars were not

---

3   Further, even if the memorandum did provide dates, "an attorney's unsworn argument does not constitute evidence," United States v. White, 366 F.3d 291, 300 (4th Cir. 2004). See also Dillon v. BMO Harris Bank, N.A., No. 1:13-cv-897, 2014 WL 911950, at *2 (M.D.N.C. Mar. 10, 2014) (explaining that "[s]tatements in briefs are not evidence").

10

equipped with dashboard cameras, except for those patrol cars used by the Randolph County interdiction team" (id., ¶ 6); (3) that, "[a]t the time of the incident, Randolph County patrol vehicles used by the interdiction team were the only vehicles with in-car cameras" (id., ¶ 9); (4) that, as of April 3, 2023, "Randolph County Sheriff's Office patrol vehicles [we]re still not outfitted with in-car cameras, except for those used by the interdiction team" (id., ¶ 12); and (5) that, "[i]n 2019, the Randolph County Sheriff's Office patrol deputies were not equipped with body-worn cameras" (id., ¶ 7).

Nor, contrary to Plaintiff's contentions, did "Sheriff Seabolt testif[y] on record contradictory information regarding dash cameras in the vehicles, disguised and concealed as 'interdiction team'" (Docket Entry 41 at 6). (See Docket Entry 41-4 at 1-2 (testifying, in response to question of (1) "[w]ere there ever dash cameras in the Randolph County patrol vehicles" that "[t]here may have been cameras on the interdiction team" under a previous administration, but that, when subsequent sheriff "came in, he dismantled that team and the cameras were out of date" and, although that sheriff purchased other cameras, "those cameras were put on detention officers at our county jail" and of (2) "when you became Sheriff, you have no knowledge of what happened to the body cameras for patrol?" that, "They never had any body cameras for

11

patrol.  Only dash cameras for the interdiction.").)[4]  Similarly, that the purported "Randolph County Sheriff's Office Staff 11/1/2018 - 6/1/2020" (Docket Entry 41-7 at 1 (emphasis omitted)) roster contains multiple employees with the last name Williams and a hire date predating Plaintiff's February 2019 traffic stop (see id.) does not contradict Sheriff Seabolt's deposition testimony (see Docket Entry 41 at 7 (arguing that "Sheriff Seabolt additionally testified the only Deputy in 2019 working with the last name Williams was a Mr. Greg Williams"))[5] or otherwise suggest that he "refuse[d] to turn over material evidence in [Plaintiff's] case" (id. at 8) or "misrepresented and fraudulently asserted statements of facts, under oath, on numerous occasions" (id. at 9 (emphasis omitted)).  (See Docket Entry 41-5 at 1-2 (testifying, "I don't know" when asked "Who is Deputy Williams in 2019," and "We had a Major Williams" when asked "Do you remember a Deputy Williams"); see also id. at 2 (asking and answering questions regarding Major Greg Williams without any follow-up questions regarding existence of other employees named Williams).)[6]

_____

4  Notably, this deposition testimony occurred in July 2022 (see id.), prior to submission of the Summary Judgment Motion.

5    The  submitted  exhibit  does  not  support  this characterization of Sheriff Seabolt's testimony. (See Docket Entry 41-5 at 1-2.)

6 Contrary to Plaintiff's suggestion, because his listed hire date post-dates Plaintiff's traffic stop (see Docket Entry 41-7 at 1), "James Williams" lacks relevance to this matter (Docket Entry 41 at 7).

12

As for the allegation that certain deputies assaulted Collins during his 2021 traffic stop (see, e.g., Docket Entry 41 at 4, 8-9), "going towards widespread and dangerous excessive force to the public destroying the public [sic] Constitutional Rights" (id. at 8), "an attorney's unsworn argument does not constitute evidence," United States v. White, 366 F.3d 291, 300 (4th Cir. 2004). Even accepting the unsupported assertion regarding Collins' alleged 2021 beating, however, an incident occurring nearly two years after Plaintiff's 2019 traffic stop could not have caused Plaintiff's alleged injury and does not establish the existence of any problematic policy or custom at the time of Plaintiff's interaction with the relevant Defendants. See, e.g., Wong v. Guilford Cnty. Sheriff Dep't, No. 1:23cv223, 2024 WL 85548, at *8 (M.D.N.C. Jan. 8, 2024) ("Moreover, because the commanders' post-incident determinations regarding the propriety of the deputies' actions in arresting [a plaintiff] did not cause the allegedly unlawful arrest, [the p]laintiffs lack a viable Section 1983 claim against those officials." (emphasis in original)), recommendation adopted, slip op. (M.D.N.C. Jan. 30, 2024). Therefore, to the extent that Plaintiff suggests the Collins incident renders manifestly unjust the dismissal of all official-capacity claims, allegedly allowing Defendants to escape accountability for their actions, Plaintiff has not met her "high burden of showing that [the Opinion] was

13

clearly erroneous and would work a manifest injustice," <u>TFWS</u>, 572
F.3d at 194.

Finally, Plaintiff maintains that Court erred in dismissing
John Doe Defendants from this litigation because "*John Doe A and
John Doe B **were not movants for Summary Judgment**.*" (Docket Entry
41 at 15 (emphasis in original); <u>see</u> <u>id.</u> (arguing that, pursuant to
Rule 60(a), Court should fix its "*Mistake, Clerical Error*" in
"dismiss[ing] claims against John Doe A[] and John Doe B")
(emphasis in original).) "District courts are widely acknowledged
to possess the power to enter summary judgments *sua sponte*, so long
as the losing party was on notice that she had to come forward with
all of her evidence." <u>Anderson v. Wachovia Mortg. Corp.</u>, 621 F.3d
261, 280 (3d Cir. 2010) (brackets and internal quotation marks
omitted). "The notice requirement is satisfied when a case
involves the presence of a fully developed record, the lack of
prejudice, and a decision based on a purely legal issue." <u>Id.</u>
(brackets and internal quotation marks omitted). This case met
those criteria. (<u>See</u> Docket Entry 35 at 45-46 (explaining that,
"although the Fourth Circuit has allowed lawsuits to proceed
against John Doe defendants, a John Doe defendant must be
identified by the time the issues are adjudicated on their merits,
because judgments may not be entered against unnamed defendants,"
and thus "Plaintiff's post-discovery failure to identify [John] Doe
Defendants warrants summary judgment as to her claims against them"

14

(brackets, citations, ellipsis, and internal quotation marks omitted)).)

Moreover, as the Fourth Circuit has explained in rejecting a similar argument that a "district court erred by granting summary judgment on [a plaintiff's] tortious interference claim because, according to [the plaintiff], [the defendant] did not challenge this claim in his motion for summary judgment," Penley v. McDowell Cnty. Bd. of Educ., 876 F.3d 646, 661 (4th Cir. 2017):

> [The defendant's] motion clearly requested summary judgment on "all claims against him." J.A. 271. While courts are not obligated to do the work of the litigants, even if [the defendant] presented no argument or authority on the tortious interference claim, district courts may enter summary judgment sua sponte "so long as the losing party was on notice that she had to come forward with all of her evidence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). Here, [the defendant] moved for summary judgment on "all claims against him." J.A. 271. [The plaintiff] had raised five claims against [the defendant], including the tortious interference claim. Accordingly, [the plaintiff] was on notice "to come forward with all . . . evidence" relevant to his tortious interference claim, satisfying *Celotex*. *See Celotex*, 477 U.S. at 326; *see also Allstate Ins. Co. v. Fritz*, 452 F.3d 316, 323 (4th Cir. 2006) (finding adequate notice where one of two defendants moved for summary judgment on negligence claim).

Penley, 876 F.3d at 661 (parallel citations omitted). Here, the Summary Judgment Motion "move[s] for summary judgment on all claims asserted in Plaintiff['s operative] Complaint" (Docket Entry 30 at 1 (emphasis added)), which includes Plaintiff's claims against John Doe Defendants (see generally Docket Entries 1, 23-1). "Accordingly, [Plaintiff] was on notice to come forward with all

15

evidence relevant to [her claims against John Doe Defendants], satisfying [the summary judgment notice requirements]." <u>Penley</u>, 876 F.3d at 661 (ellipsis and internal quotation marks omitted).

In addition, "John Doe suits are permissible only against real, but unidentified, defendants." <u>Chidi Njoku v. Unknown Special Unit Staff</u>, No. 99-7644, 2000 WL 903896, at *1, 217 F.3d 840 (table) (4th Cir. July 7, 2000) (internal quotation marks omitted). "The designation of a John Doe defendant is generally not favored in the federal courts; it is appropriate only when the identity of the alleged defendant is not known at the time the complaint is filed and the plaintiff is likely to be able to identify the defendant after further discovery." <u>Id.</u> "If it does not appear that the true identity of an unnamed party can be discovered through discovery or through intervention by the court, the court could dismiss the action without prejudice." <u>Id.</u> (brackets and internal quotation marks omitted).

In determining how to handle "John Doe defendants, [a] district court is in a better position than [the Fourth Circuit] to ascertain what treatment should be given, and when." <u>Attkisson v. Holder</u>, 925 F.3d 606, 628 (4th Cir. 2019), <u>as amended</u> (June 10, 2019) (internal quotation marks omitted); <u>see also</u> <u>id.</u> (explaining that, in prior, unrelated decision, Fourth Circuit panel "deferred to the district court as to 'whether the case against Doe should be now permitted to proceed or whether the case at this stage should

16

be terminated,'" and "adher[ing] to that good example and defer[ring] to the wisdom of the district judge in dismissing the John Doe defendants"). Nevertheless, the Fourth Circuit has made clear that "there is no basis to permit a judgment against an unidentified John Doe defendant." Njoku, 2000 WL 903896, at *1, 217 F.3d 840. Thus, "a John Doe defendant must be identified by the time the issues are adjudicated on their merits." Myers v. City of Charleston, No. 2:19-cv-757, 2021 WL 925326, at *10 (S.D. W. Va. Mar. 10, 2021). Plaintiff therefore needed to identify John Doe Defendants prior to resolution of the Summary Judgment Motion. See id. Plaintiff neglected to do so.

Further, once she identified John Doe Defendants, Plaintiff would need to move to amend her Complaint to include the identified individuals. See Price v. Marsh, No. 2:12-cv-5442, 2013 WL 5409811, at *2 (S.D. W. Va. Sept. 25, 2013). Because the deadline for amending pleadings ran on March 25, 2022 (see Docket Entry 13 at 2; Text Order dated Mar. 1, 2022), Plaintiff would need leave to amend the Scheduling Order under Rule 16(b), which requires "good cause" for any such modification. See, e.g., Price, 2013 WL 5409811, at *1-2. "The touchstone of 'good cause' under Rule 16(b) is diligence. In other words, the focus of the good cause inquiry is on the diligence of the party seeking modification of the [S]cheduling [O]rder." Id. at 2 (certain internal quotation marks omitted).

17

Plaintiff has not established good cause in regard to her efforts to identify John Doe Defendants. For instance, Plaintiff did not begin seeking discovery in this matter as to the identities of John Doe Defendants until, at the earliest, May 2022, months after the deadline for adding parties and amending the pleadings. (See Docket Entry 16 at 2; see also Docket Entry 17.) Additionally, although she asserts that Sheriff Seabolt withheld evidence that could have allowed Plaintiff to identify John Doe Defendants (see, e.g., Docket Entry 41 at 11), Plaintiff never moved to compel production of such evidence (see Docket Entries dated Feb. 28, 2022, to Sept. 8, 2022). Because Plaintiff did not act diligently in attempting to identify John Doe Defendants, even if she now somehow belatedly identifies such individuals, she could not add them to the Complaint. See Price, 2013 WL 5409811, at *3 (denying leave to amend complaint to identify John Doe defendant where plaintiff "was not diligent in seeking leave to amend the complaint").

Moreover, "Rule 4(m) requires the dismissal of defendants who remain unserved ninety days after the filing of a complaint unless the plaintiff shows good cause." Attkisson, 925 F.3d at 627 (internal quotation marks omitted). Plaintiff failed to serve John Doe Defendants within ninety days of filing the Complaint. (See Docket Entries dated Nov. 23, 2021, to Feb. 28, 2022.) Notably, despite identifying John Doe Defendants in the Complaint as, upon

18

information and belief, Randolph County Sheriff Deputies Williams and Shawver Jr. (see Docket Entry 1, ¶¶ 16-17), Plaintiff did not (1) obtain summonses for and attempt to serve such individuals (see Docket Entry 3), (2) request an extension of time to serve such individuals (see Docket Entries dated Nov. 23, 2021, to present), or, as far as the record reflects, (3) attempt to identify such individuals within the relevant ninety-day period (see, e.g., Docket Entry 13 at 2 (providing in Rule 26(f) Report that discovery commences after ninety-day period ends)).  For all these reasons and those discussed above, Plaintiff has not established good cause for extending the service deadline.  See Attkisson, 925 F.3d at 627 ("The facts that support the dismissal of the Amended Complaint under Rule 41(b) also show the plaintiffs' lack of diligence for purposes of Rule 4(m).").  Thus, Rule 4 requires dismissal of John Doe Defendants.  See, e.g., id. at 627-28 (affirming dismissal of unserved John Doe defendants); Myers, 2021 WL 925326, at *10 ("Plaintiffs here have had more than ample time to discover, disclose the identities of, and serve the 25 John Does designated in their complaint.  In fact, the [c]ourt's own recitation of the facts names multiple officers on the scene on September 12, and yet, Plaintiffs have not served any additional defendants . . . . Because these 25 John Does have not been served and cannot have a judgment entered against them, they must be dismissed from this action."); Price, 2013 WL 5409811, at *5-6 (dismissing John Doe

19

defendant under Rule 4(m) where "Trooper John Doe was never served, and [the plaintiff] never requested an extension of time from the court to serve him" in the year since filing the complaint).

Accordingly, Plaintiff has not shown any error in the Opinion, much less a clear error causing manifest injustice, in connection with the dismissal of John Doe Defendants. However, some confusion apparently exists regarding the status of John Doe Defendants. (See Docket Entry 42 at 4 ("To the extent Plaintiff claims that Rule 60(a) applies to the John Doe Defendants, [Named] Defendants did not move for dismissal of the John Doe Defendants, nor did the Court's summary judgment order address the John Doe Defendants.").) The Court therefore confirms the dismissal of John Doe Defendants without prejudice. See, e.g., Attkisson, 925 F.3d at 628 ("[P]ursuant to Rule 4(m), and consistent with th[e Fourth Circuit's] prior treatment of Doe defendants, the dismissal of the John Doe agents must be without prejudice . . . . [given] the principle that a court generally lacks personal jurisdiction over unserved parties.").

**CONCLUSION**

The Court retains jurisdiction over the Motion, but Plaintiff fails to justify reconsideration of the Opinion.

**IT IS THEREFORE ORDERED** that the Motion (Docket Entry 39) is **DENIED**.

**IT IS FURTHER REAFFIRMED** that John Doe Defendants **ARE DISMISSED WITHOUT PREJUDICE.**

This 25th day of March, 2024.

            /s/ L. Patrick Auld
         **L. Patrick Auld**
**United States Magistrate Judge**

21