## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

KA'LAH (KALAH) MARTIN,          )
                                )
            Plaintiff,          )
                                )
        v.                      )          1:21cv906
                                )
GREGORY SEABOLT, et al.,        )
                                )
            Defendants.         )

### MEMORANDUM OPINION AND ORDER

This case comes before the Court on Plaintiff's Motion for Reconsideration and a New Trial (Docket Entry 74) (the "Second Reconsideration Motion"). For the reasons that follow, the Court will deny the Second Reconsideration Motion.[1]

### BACKGROUND

Alleging state and federal claims related to an incident on February 28, 2019, Ka'lah (Kalah) Martin (the "Plaintiff") sued various employees of the Randolph County Sheriff's Office, including Deputies Travis Short, Kyle Gabby, and Jeremiah Harrelson (collectively, the "Defendants"), as well as Sheriff Gregory Seabolt. (See, e.g., Docket Entry 1, ¶¶ 2-4, 32.) Of relevance here, Plaintiff sued Sheriff Seabolt solely in his official capacity, but sued Defendants in both their official and individual

_____

1 Pursuant to the parties' consent, now-Senior United States District Judge Loretta C. Biggs referred this case to the undersigned United States Magistrate Judge for all proceedings. (See Docket Entry 15 at 1.)

capacities.  (See, e.g., id. at 1.)[2]  After the parties engaged in discovery (see, e.g., Docket Entry 16 at 2 (describing certain discovery efforts)), the defense "move[d] for summary judgment on all claims asserted in Plaintiff['s operative] Complaint" (Docket Entry 30 (the "Summary Judgment Motion") at 1).  Plaintiff opposed the Summary Judgment Motion, but did not file her own motion for summary judgment.  (See Docket Entries dated Oct. 11, 2022, to Apr. 25, 2023.)

    The Court granted in part the Summary Judgment Motion, dismissing all official-capacity claims and allowing only Plaintiff's state-law assault and battery and Section 1983 excessive force claims against Defendants in their individual capacities to proceed.  (See, e.g., Docket Entry 35 (the "Summary Judgment Opinion") at 67; see also id. at 68 (explaining that, "as to all other claims and all other [d]efendants, the Court will enter summary judgment against Plaintiff").)  As the Summary Judgment Opinion noted, Plaintiff's official-capacity claims failed because, inter alia, "Plaintiff has not presented evidence sufficient to indicate the existence of a policy allowing for [the challenged conduct]" (id. at 20; see also id. at 24, 43, 48) and, as Plaintiff conceded, she "failed to allege or present any evidence that Defendants waived sovereign immunity through the

_____

    2  Docket Entry page citations utilize the CM/ECF footer's pagination.

purchase of liability insurance" (id. at 59 (internal quotation marks omitted)), thereby defeating Plaintiff's state-law official-capacity tort claims (see id. at 58-59). However, genuine issues of material fact precluded resolution, at the summary judgment stage, of Plaintiff's individual-capacity assault, battery, and excessive force claims against Defendants, including regarding the applicability of qualified immunity. (See id. at 25-42, 58-60.)

Plaintiff subsequently moved, purportedly pursuant to Rule 60 of the Federal Rules of Civil Procedure (the "Rules"), for reinstatement of her official-capacity claims. (Docket Entry 39 (the "First Reconsideration Motion") at 1-2.) The First Reconsideration Motion based its reconsideration request primarily on the fact that, nearly two years after the traffic stop involving Plaintiff, Deputies Gabby and Short participated in another traffic stop, this time of an individual named Justin Collins, using a patrol vehicle equipped with a dashboard camera, a situation that, in Plaintiff's view, establishes the existence of video camera footage of the earlier incident involving Plaintiff. (See generally Docket Entry 41; see also Docket Entry 43 (the "Reconsideration Opinion") at 10 (explaining that, "[a]ccording to Plaintiff, the fact that [Deputy] Gabby's patrol car contained video cameras when he conducted a traffic stop of Collins in February 2021 proves that the defense lied when it said that no video of Plaintiff's stop in February 2019 exists").) Defendants

Case 1:21-cv-00906-LPA   Document 79   Filed 04/07/25   Page 3 of 25

opposed the First Reconsideration Motion. (See Docket Entry 42 (the "Original Opposition") at 1-10.)

For myriad reasons, the Court denied the First Reconsideration Motion. (See Docket Entry 43 at 1-21.) To begin, as the Reconsideration Opinion observed, "Plaintiff failed to reply to the [Original] Opposition" (id. at 8), thereby conceding its "multiple arguments for denial of the [First Reconsideration] Motion" (id.) and "warranting denial of the [First Reconsideration] Motion on this basis alone" (id. at 9). The Reconsideration Opinion also explained that, "to the extent that Plaintiff suggests the Collins incident renders manifestly unjust the dismissal of all official-capacity claims, allegedly allowing [the d]efendants to escape accountability for their actions, Plaintiff has not met her high burden of showing that the [Summary Judgment] Opinion was clearly erroneous and would work a manifest injustice." (Id. at 13-14 (brackets and internal quotation marks omitted).) Further, the Reconsideration Opinion noted, "the proffered evidence does not support Plaintiff's contentions" (id. at 10), as, inter alia,

> the fact that, while on interdiction duty in 2021, [Deputy] Gabby's patrol vehicle contained video cameras (see, e.g., Docket Entry 41-1 at 1-2) does not contradict Sheriff Seabolt's sworn statement (1) that "[t]here is no camera footage of [Plaintiff's] February 28, 2019, traffic stop" (Docket Entry 41-3, ¶ 5); (2) that, "[i]n 2019, the Randolph County Sheriff's Office patrol cars were not equipped with dashboard cameras, except for those patrol cars used by the Randolph County interdiction team" (id., ¶ 6); (3) that, "[a]t the time of the incident, Randolph County patrol vehicles used by the interdiction team were the only vehicles with in-car

4

cameras" (id., ¶ 9); (4) that, as of April 3, 2023, "Randolph County Sheriff's Office patrol vehicles [we]re still not outfitted with in-car cameras, except for those used by the interdiction team" (id., ¶ 12); and (5) that, "[i]n 2019, the Randolph County Sheriff's Office patrol deputies were not equipped with body-worn cameras" (id., ¶ 7).

(Docket Entry 43 at 10-11 (emphasis and certain brackets in original).)

Meanwhile, Defendants pursued an interlocutory appeal of the Summary Judgment Opinion's denial of qualified immunity. (See Docket Entry 44 at 3.) The United States Court of Appeals for the Fourth Circuit affirmed the denial of qualified immunity, agreeing that material factual disputes in the then-existing record precluded an award of qualified immunity to Defendants at the summary judgment stage. (See id. at 3-10.) The matter then proceeded to a three-day jury trial on Plaintiff's individual-capacity assault, battery, and excessive force claims against Defendants. (See Docket Entries dated Nov. 18, 2024, to Nov. 20, 2024.) Defendants, Sheriff Seabolt, and Plaintiff each testified during the trial. (See Docket Entry 67 at 1.) The jury promptly found that Plaintiff failed to prove her claims against Defendants (see Docket Entry 69 at 1-6), after which the Court entered judgment in favor of the various defendants in the matter (see Docket Entry 72 (the "Judgment") at 1-2).

Four days later, Plaintiff filed the Second Reconsideration Motion (see Docket Entries dated Nov. 25, 2024), moving

5

> under Rule 59(1)(b)(d)(e) . . ., as well as Rule
> 60(5)(6); 42 U.S.C. §1983 civil rights violations and the
> protections therein under Federal Law, The Code of
> Conduct for United States Judges promoting public
> confidence in the integrity and impartiality of the
> judiciary, and the United State Constitution; and or, the
> inherent duties and powers of the Federal Court and
> Judiciary.

(Docket Entry 74 at 1 (ellipsis added).)[3] According to Plaintiff's memorandum in support of the Second Reconsideration Motion, the jury's verdict "did not support [Plaintiff] because, it should not" (Docket Entry 76 (the "Reconsideration Memorandum") at 4) and "the jury was correct in reaching the verdict that they did; individually, [Defendants] were not liable" (id. at 18), but the verdict nevertheless "represents a manifest injustice to [Plaintiff]" (id. at 4) because, in Plaintiff's "[counsel's] opinion, . . . there should not be a blanket hard-line rule on the immunity issue" (id. at 13 (ellipsis added)) and the dismissal of Plaintiff's official-capacity claims "for lack of [a] policy" (id. at 10) harmed Plaintiff, Defendants, and the public at large (see, e.g., id. at 10-13).

Defendants responded in opposition to the Second Reconsideration Motion. (See Docket Entry 77 (the "Opposition").) Plaintiff did not reply to the Opposition. (See Docket Entries dated Dec. 3, 2024, to present.) Nearly two months after

---

3 With the exception of bracketed alterations and, as noted, certain ellipses, this Opinion accurately transcribes all quotations from Plaintiff's materials, without flagging grammatical/scrivener errors.

Defendants filed the Opposition, however, Plaintiff filed a suggestion of subsequently decided authority, which she maintains "directly impact[s] th[e Second Reconsideration] Motion" (Docket Entry 78 (the "Supplement") at 1).

## DISCUSSION

### I. Relevant Standards

Plaintiff purports to bring the Second Reconsideration Motion pursuant to "Rule 59(1)(b)(d)(e)" and "Rule 60(5)(6)." (Docket Entry 74 at 1.)[4] Construed liberally, the Second Reconsideration Motion appears to pursue a motion for a new trial under Rule 59(a)(1), a motion to alter or amend a judgment under Rule 59(e), and a motion for relief from judgment under Rule 60(b). (See generally Docket Entries 74, 76.) The Fourth Circuit "ha[s] squarely held, however, that a motion filed under both Rule 59(e) and Rule 60(b) should be analyzed only under Rule 59(e) if it was

_____

4  Rule 59(a) authorizes the Court, "on motion, [to] grant a new trial," Fed. R. Civ. P. 59(a)(1), whereas Rule 59(d) authorizes "the [C]ourt, on its own, [to] order a new trial for any reason that would justify granting one on a party's motion," Fed. R. Civ. P. 59(d). In turn, Rule 59(b) provides that "[a] motion for a new trial must be filed no later than 28 days after the entry of judgment," Fed. R. Civ. P. 59(b), and Rule 59(e) specifies that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment," Fed. R. Civ. P. 59(e). For its part, Rule 60(b) provides that, "[o]n motion and just terms, the [C]ourt may relieve a party or its legal representative from a final judgment, order, or proceeding" if, inter alia, "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable," Fed. R. Civ. P. 60(b)(5), or for "any other reason that justifies relief," Fed. R. Civ. P. 60(b)(6).

filed no later than 10 days after entry of the adverse judgment and seeks to correct that judgment." Robinson v. Wix Filtration Corp. LLC, 599 F.3d 403, 412 (4th Cir. 2010).[5]

A court may "grant a Rule 59(e) motion only in very narrow circumstances: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." Hill v. Braxton, 277 F.3d 701, 708 (4th Cir. 2002) (internal quotation marks). Essentially,

> [R]ule [59(e)] permits a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings. Rule 59(e) motions may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance [before the judgment].

Pacific Ins. Co. v. American Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998) (citation and internal quotation marks omitted); accord id. at 404 ("Rule 59(e) may not be used to raise new arguments or present novel legal theories that could have been raised prior to judgment.").

Importantly, "mere disagreement does not support a Rule 59(e) motion," Hutchinson v. Staton, 994 F.2d 1076, 1082 (4th Cir. 1993)

---

5   Because Plaintiff filed the Second Reconsideration Motion four days after the Court entered the Judgment (see Docket Entries dated Nov. 21, 2024, to Nov. 25, 2024), this principle governs consideration of the Second Reconsideration Motion.

(citing <u>Atkins v. Marathon LeTourneau Co.</u>, 130 F.R.D. 625, 626 (S.D. Miss. 1990)), and Rule 59(e) does not give litigants "another opportunity to argue a [m]otion denied by th[e] Court," <u>Atkins</u>, 130 F.R.D. at 626. <u>See also, e.g.</u>, <u>Durkin v. Taylor</u>, 444 F. Supp. 879, 889 (E.D. Va. 1977) (observing that (1), "[the plaintiff's] brief in support of his [Rule 59(e)] motion is no more than an expression of a view of the law contrary to that set forth in the [c]ourt's opinion," (2), "[w]hatever may be the purpose of Rule 59(e)[,] it should not be supposed that it is intended to give an unhappy litigant one additional chance to sway the [court]," and (3), "[s]ince the plaintiff has brought up nothing new except his displeasure[,] th[e c]ourt has no proper basis upon which to alter or amend the order previously entered").

Moreover, "reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." 11 Charles Alan Wright, et al., <u>Federal Practice and Procedure</u> § 2810.1 (3d ed.). Accordingly, "the circumstances under which a Rule 59(e) motion may be granted are so limited that . . . Rule 59(e) motions typically are denied." <u>Sherrod v. Harkleroad</u>, No. 1:12cv48, 2016 WL 9776807, at *1 (W.D.N.C. July 26, 2016) (brackets and internal quotation marks omitted)).

Meanwhile, "[t]he decision to grant or deny a new trial under [Rule] 59 rests with the sound discretion of the district court," <u>Nichols v. Ashland Hosp. Corp.</u>, 251 F.3d 496, 500 (4th Cir. 2001)

(internal quotation marks omitted), "and will not be reversed save in the most exceptional circumstances," <u>Minter v. Wells Fargo Bank, N.A.</u>, 762 F.3d 339, 346 (4th Cir. 2014) (internal quotation marks omitted). "A new trial is warranted when (1) the verdict is against the clear weight of the evidence; (2) the verdict is based upon evidence which is false; or (3) the verdict will result in a miscarriage of justice." <u>Conner v. Schrader-Bridgeport Int'l, Inc.</u>, 227 F.3d 179, 200 (4th Cir. 2000). "In considering a new trial motion, the district court may weigh the evidence and consider the credibility of the witnesses." <u>Id.</u>

## II. Preliminary Matters

Repeating her pattern with the First Reconsideration Motion (<u>see</u> Docket Entry 43 at 8), Plaintiff failed to reply to the Opposition (<u>see</u> Docket Entries dated Dec. 3, 2024, to present). "The Opposition advances multiple arguments for denial of the [Second Reconsideration] Motion" (Docket Entry 43 at 8), including (1) that the jury possessed all necessary evidence in reaching its verdict, which did not depend on qualified immunity; (2) that the Second Reconsideration Motion improperly attempts to relitigate the summary-judgment dismissal of Plaintiff's official-capacity claims; and (3) that none of the Rules that Plaintiff references in support of the Second Reconsideration Motion provides grounds for relief. (<u>See</u> Docket Entry 77 at 1-8.) In sum, the Opposition asserts:

> [The Second Reconsideration Motion] attempts to relitigate, for the third time, [Plaintiff's] official

10

capacity claims against Defendants . . ., as well as
non-party Sheriff Seabolt. The Court once dismissed
those claims and then denied [Plaintiff's first] motion
for reconsideration. There is no basis under Rules 59 or
60 to reopen that issue and give [Plaintiff] a new trial
or relief from judgment. [The Second Reconsideration
M]otion should be denied.

(Id. at 8.)

As with the First Reconsideration Motion,

[b]y failing to address the Opposition's arguments,
Plaintiff concedes them, warranting denial of the [Second
Reconsideration] Motion on this basis alone. See, e.g.,
Kinetic Concepts, Inc. v. Convatec Inc., No. 1:08cv918,
2010 WL 1667285, at *6-9 (M.D.N.C. Apr. 23, 2010)
(examining implications of such failure, noting existence
of "general principle that a party who fails to address
an issue has conceded the issue," and collecting cases).

(Docket Entry 43 at 9.)

Further, to the extent that the Second Reconsideration Motion

relies on Rule 50 or Rule 52, those efforts fall short. According

to the Reconsideration Memorandum, "§1983 demands this Federal

Courts attention to act against a jury that did not make its

decision (1) with all facts available, (2) reasonably under the

existing law and it does so with Federal Rules of Procedure Rules

50, 52, 59, and 60." (Docket Entry 76 at 8.) As Defendants

correctly assert (see Docket Entry 77 at 2 n.1), Plaintiff fails to

develop any argument regarding Rule 50 or Rule 52 (see Docket Entry

76 at 1-19). Accordingly, Plaintiff waived any argument for relief

based on either Rule. See, e.g., Grayson O Co. v. Agadir Int'l

LLC, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument

by failing to . . . develop [her] argument — even if [her] brief

11

takes a passing shot at the issue." (internal quotation marks omitted)).

In any event, as Defendants again correctly note (see Docket Entry 77 at 2 n.1), neither Rule applies to the instant matter. A party can only bring a post-trial motion under Rule 50(b) if the party moved for judgment as a matter of law under Rule 50(a) "before the case [wa]s submitted to the jury," Fed. R. Civ. P. 50(a)(2). See Nichols, 251 F.3d at 501 & n.1 (explaining that, in absence of Rule 50(a) motion, party's "post-trial motion for judgment as a matter of law" under Rule 50(b) "was effectively a nullity, since a Rule 50(b) motion may only be made as a renewal of a motion previously made on the same grounds under Rule 50(a)"). Because Plaintiff failed to move for judgment as a matter of law before submission of the case to the jury (see Docket Entries dated Nov. 18, 2024, to Nov. 20, 2024 (reflecting that only Defendants made Rule 50 motion)), she cannot now move for judgment as a matter of law under Rule 50(b), see Nichols, 251 F.3d at 501 n.1. For its part, Rule 52 applies only to actions tried "without a jury or with an advisory jury." Fed. R. Civ. P. 52(a)(1). As the parties conducted a jury, not bench, trial (see, e.g., Minute Entry dated Nov. 20, 2024 ("Jury charged, retired, and returned with a verdict at 1:56 p.m.")), Rule 52 provides no basis for relief in this matter, see generally Fed. R. Civ. P. 52.

Plaintiff's Supplemental Authority likewise fails to justify relief. According to the Supplemental Authority, by virtue of certain actions by North Carolina state officials in an ongoing dispute regarding the results of a North Carolina Supreme Court election, "the State of North Carolina has waived sovereign immunity," a development that allegedly necessitates reinstatement of Plaintiff's official-capacity claims. (Docket Entry 78 at 2.) More specifically, the Supplemental Authority states:

A. As represented by Special Deputy of the North Carolina Attorney General, appearing before the United States Court of Appeals on behalf of the State Board of Elections January 27, 2025; "the North Carolina Department of Justice, appearing on behalf of the State Board, Judge Griffin's extraordinary request to retroactively change longstanding election rules, and thereby disenfranchise more than 60,000 North Carolina Registered Voters, should confront the Federal Civil Rights Laws, in a Federal Forum, as Congress intended, under Section 1443." *Appellant North Carolina State Board Oral Argument, Riggs v. Griffin,* No. 25-1024(4th Cir. 01/27/2025).

B. The State of North Carolina removed an election case on the objective of one official over another; both presiding North Carolina Court of Appeals Judges, and one North Carolina State Supreme Court Judge.

C. In *Riggs v. Griffin*, No. 25-1024(4th Cir. 01/27/2025); the Docket report highlights issues of Randolph County in the recent election. *Id.* at 208-209, and at 210-355.

D. The State of North Carolina expressly consented to being sued, by and through the Attorney General of the State of North Carolina; in fact, it not only consented; the State of North Carolina initiated suit in Federal Court through the Board of Elections, which includes, for this suits purposes;

13

> Elected Official Gregory Seabolt as representative
> of Randolph County, officially.
>
> **WHEREFORE,** the State of North Carolina has waived
> sovereign immunity; asserting and asking for Randolph
> County's involvement in a Federal Forum. [Plaintiff]
> requests this Honorable Court Correct or Amend Judgment
> as to all Official Capacity claims pending in this court;
> and grant a new trial on all Official Capacity Claims
> against Randolph County, as; an elected Sheriff is a
> Representative of the County of Randolph, North Carolina
> under law.

(Docket Entry 78 at 1-2.)

Nothing in the Supplemental Authority changes the conclusion that sovereign immunity shields Defendants from Plaintiff's official-capacity assault and battery claims because, as Plaintiff previously conceded, she failed to establish that "Defendants waived sovereign immunity through the purchase of liability insurance" (Docket Entry 35 at 59 (internal quotation marks omitted)). (See Docket Entry 78 at 1-2.) Accordingly, the Supplemental Authority does not warrant reconsideration of the dismissal of Plaintiff's official-capacity claims.

### III. Rule 59 Challenges

Although its precise contours lack clarity, the Reconsideration Memorandum appears to focus on an alleged need "to correct injustice" (Docket Entry 76 at 19). (See id. at 1-19.) Consistent with that view, the Second Reconsideration Motion maintains that existing legal principles regarding qualified immunity and official-capacity claims wrought a manifest injustice upon Plaintiff, Defendants, and the public at large. (See Docket

14

Entry 74 at 1 ("In support of Plaintiff's Motion for new trial, Plaintiff relies on the law, the lack of law, and the Judicial necessity to correct injustice, protect the public, and interpret and apply the law for the benefit of the people as the need presents itself upon the Court."); see also, e.g., Docket Entry 76 at 6-7 ("In this case, everyone is harmed by the law, trial, any verdict; motion, appeal; because the entity that is responsible can skirt justice and place the blame on younger subordinates in their individual capacities and a mentally ill black woman in a hooptie and thus; this case, as it stands right now, violates Plaintiffs and Defendants Rights against unconstitutional state action."), 9 ("In this cases Judgment, this court must amend, reconsider, order a new trial, correct and or amend the Judgement entered, in any manner under the law [Plaintiff] receives justice, and we the individual people receive justice.").)[6]  Plaintiff thus urges the Court to allow her to proceed on her official-capacity claims against Sheriff Seabolt.  (See, e.g., Docket Entry 76 at 10-13.) These arguments lack merit.

_____

    6   Plaintiff chose to sue Defendants in their individual capacities.  (See, e.g., Docket Entry 1 at 1.)  As such, her contention that conducting the trial against Defendants in their individual capacities represents a manifest injustice (see, e.g., Docket Entry 76 at 6-7; see also id. at 16 n.4 (asserting that, in testifying, Deputy Short "should be there protected by official capacity protection")) warrants no relief.  See Robinson, 599 F.3d at 407-11 (affirming denial of Rule 59 relief based on party's strategic litigation choice, explaining that "[t]he consequences stemming from th[e plaintiff's] choice . . . cannot be classified as manifestly unjust towards [the plaintiff]").

To begin, rather than asserting that an intervening change in law necessitates relief, the Reconsideration Memorandum proffers various policy arguments for why the Court should take this "chance to establish law for the public at large" (id. at 9). (See, e.g., id. at 10 (advancing a "COMPELLING CAUSE FOR CHANGE" with the subheading "*What are elected leaders for, where are we going with the law as it stands, who are the people?*"), 12 (proposing various new legal rules for official-capacity liability, and maintaining that "[t]here are countless fair and impartial mechanisms this Court could set the stage and establish in this case with this motion; and creativity in the law is often underused," notwithstanding that, "[i]n federal Court, in cases like these, creativity in the law is required").) "It is the Congress, not the federal judiciary, that is assigned the policy-making role in the federal system," Smith v. McDonald, 562 F. Supp. 829, 840 (M.D.N.C. 1983), aff'd, 737 F.2d 427 (4th Cir. 1984), aff'd, 472 U.S. 479 (1985), and thus, "to the extent that [Plaintiff] believes [her preferred approach] promotes 'better' policy, that argument should be made to the legislature — not the judiciary," Lynn v. Monarch Recovery Mgmt., Inc., 953 F. Supp. 2d 612, 625 (D. Md. 2013). In any event, despite Plaintiff's perspective that "[t]his case screams for relief and law[, which] . . . this Court has the power to define" (Docket Entry 76 at 18 (ellipsis added)), only "an

16

intervening change of controlling law," <u>Robinson</u>, 599 F.3d at 411, not a proposal to change the law, warrants relief under Rule 59(e).

Relatedly, Plaintiff expresses displeasure regarding applicable legal principles. (<u>See, e.g.</u>, Docket Entry 76 at 5 (asking, "how can an officer be reasonable, individually" under qualified immunity standard and asserting that "[t]he law does not answer that question"), 12 (contending that "[the] policy of not having a policy, and or the law in general, prevent the issues from being heard as they should of in front of this jury"), 13 (expressing "[Plaintiff's counsel's] opinion, shared with many other attorneys[, that] there should not be a blanket hard-line rule on the immunity issue").) As an initial matter, qualified immunity played no role in the outcome of the trial. (<u>See</u> Docket Entry 69 at 1-3 (reflecting jury determination that Plaintiff failed to prove that Defendants violated her rights).) Accordingly, Plaintiff's arguments regarding qualified immunity miss the mark. Regardless, disagreement with established legal principles provides no grounds for Rule 59 relief. <u>See</u> <u>Durkin</u>, 444 F. Supp. at 889; <u>see also, e.g.</u>, <u>Hutchinson</u>, 994 F.2d at 1082 ("While plaintiffs disagreed with how the district court applied the *Christiansburg* standard, mere disagreement does not support a Rule 59(e) motion.").

Moreover, prior to entry of the Judgment, Plaintiff could — and often did — advance her arguments regarding official-capacity

17

liability and qualified immunity (see generally Docket Entry 76);
indeed, the Second Reconsideration Motion represents Plaintiff's
third attempt to salvage her official-capacity claims. (See, e.g.,
Docket Entry 33 at 3-4 (opposing dismissal of official-capacity
claims at summary judgment), 15-16 (arguing that "[t]he record
strongly indicates Sheriff Seabolt implements a policy and or
custom that flagrantly ignores the duties of sheriff's deputies in
responding to an infraction," precluding summary judgment on
official-capacity claims); Docket Entry 39 at 1-2 (requesting, in
First Reconsideration Motion, reconsideration of dismissal of
"[a]ll official capacity claims"); Docket Entry 76 at 8-18 (seeking
reintroduction of official-capacity claims).) However, "Rule 59(e)
may not be used to raise new arguments or present novel legal
theories that could have been raised prior to judgment," Pacific
Ins., 148 F.3d at 404, and does not "give an unhappy litigant one
additional chance to sway the [Court]," Durkin, 444 F. Supp. at
889. Plaintiff's contentions thus fail to justify Rule 59(e)
relief. See, e.g., Thomas v. South Carolina Dep't of Mental
Health, No. 23-2190, 2024 WL 4298146, at *1 (4th Cir. Sept. 26,
2024) (concluding that Rule 59 "motion provided no basis for
relief" where movant "admittedly relied on new, broader arguments
not made previously"); Durkin, 444 F. Supp. at 889 (denying
reconsideration request where party's "brief in support of his
motion is no more than an expression of a view of the law contrary

18

to that set forth in the [c]ourt's opinion"); see also U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC, 899 F.3d 236, 257 (4th Cir. 2018) (explaining that, "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again" (internal quotation marks omitted)).

Furthermore, the Reconsideration Memorandum repeatedly concedes that the jury reached the correct verdict based upon the evidence presented in the parties' three-day trial. (See, e.g., Docket Entry 76 at 4 ("[The] verdict . . . did not support [Plaintiff] because, it should not. The jury did what they could with what they were presented." (ellipsis added)), 18 ("[I]ndividually, [Defendants] were not liable.").) However, "a [Section 1983 official-capacity] claim fails as a matter of law where there is no underlying constitutional violation." Russ v. Causey, 732 F. Supp. 2d 589, 604 (E.D.N.C. 2010), aff'd in part, 468 F. App'x 267 (4th Cir. 2012); see also, e.g., Waybright v. Frederick Cnty., 528 F.3d 199, 203 (4th Cir. 2008) ("The [Section] 1983 claim against [individual, subordinate official] is the gateway to all the other [Section] 1983 claims, for supervisors and municipalities cannot be liable under [Section] 1983 without some predicate constitutional injury at the hands of the individual state officer, at least in suits for damages." (brackets and internal quotation marks omitted)); Boston v. Davis, No. 3:11cv450,

19

2011 WL 6826812, at *6 (W.D.N.C. Dec. 5, 2011) ("Since there is no underlying constitutional violation by [the defendant] in his individual capacity, [the p]laintiff's official capacity claims against [the defendant] should also be dismissed."). The jury's determination that Defendants did not violate Plaintiff's rights necessarily defeats any associated official-capacity claims against Defendants or Sheriff Seabolt, thwarting Plaintiff's attempt to revive those official-capacity claims.

Plaintiff laments, however, the alleged impact of the dismissal of her official-capacity claims on the evidence introduced at trial. According to the Reconsideration Memorandum, "the law does not allow [Plaintiff] to enter evidence for the jury to understand a proper verdict" (Docket Entry 76 at 10),[7] and thus, "[i]nstead of presenting evidence that demands liability, just as everyone in the room saw, three men and one woman were paying for the unconstitutional actions of the state" (id. at 17). In particular, the Reconsideration Memorandum suggests that the lack

7 More specifically, the Reconsideration Memorandum asserts:

Reasonable officer is a legal principal to the jury and there was not time to make to a layperson understand the facts as applied to the law. Time in trial is the secondary issue to the primary; the law does not allow [Plaintiff] to enter evidence for the jury to understand a proper verdict. In this case, all [D]efendants testified they did not act as a reasonable officer, they did testify they acted as a reasonable individual officer.

(Id.)

of official-capacity claims prevented Plaintiff from introducing two pieces of evidence and regrettably necessitated the introduction of a third kind of evidence. (See, e.g., id. at 14-17.) These arguments fail to justify Rule 59 relief.[8]

First, Plaintiff maintains that the lack of official-capacity claims prevented her from introducing a canine-focused police magazine into evidence. (See id. at 16.) Per the Reconsideration Memorandum:

> [Deputy] Short also testified that after this incident he was on the cover of a police magazine, where in an official capacity claim as plead, [Plaintiff's counsel] could have allowed the jury to view the extremely clear body camera that "does not exist," as [Sheriff] Seabolt testified three separate times under oath.

(Id.)

As an initial matter, Plaintiff fails to explain how the existence or non-existence of the official-capacity claims impacted the introduction of this magazine into evidence. (See id. at 15-16.) Moreover, Deputy Short testified that, rather than a body camera, the image in question — of another individual — involved a device that enables a K-9 officer to remotely open a door for a canine. Further, even if the image in question involved a body camera, it still would not establish the existence of body camera

---

8 As discussed above, the Reconsideration Memorandum concedes that the evidence introduced at trial supported the jury's verdict. Accordingly, Plaintiff does not appear to seek a new trial on the grounds that "the verdict is against the clear weight of the evidence," Conner, 227 F.3d at 200. Regardless, these concessions fatally undermine any such contention.

21

footage of the incident involving Plaintiff. As the Reconsideration Opinion already explained, the fact that an officer, in a different role, possessed a video camera years after Plaintiff's traffic stop does not contradict the defense's repeatedly reaffirmed assurances that no body camera footage exists of the incident involving Plaintiff. (See Docket Entry 43 at 10-11.)

Plaintiff next asserts that the lack of official-capacity claims prevented her from introducing evidence regarding the resolution of charges that Plaintiff incurred as a result of the underlying incident. (See Docket Entry 76 at 17.) More specifically, the Reconsideration Memorandum states:

> [Sheriff] Seabolt looked directly at [Plaintiff], the first time she started crying, and stated that he has "agreements," with DA, and they could always open up the charges... five and a half years later. If [Sheriff] Seabolt was in his official capacity, immediately [Plaintiff's lawyer] would have attempted to enter the evidence she has of October, 2024; where there is circumstantial evidence, *someone might have tried to open her record* before trial. Which would explain the unsolicited explanations of some "mental health agreement," in exchange for voluntary dismissal that most certainly did not happen. The charges were dismissed because the deputies did not show up, and the stop and seizure was unconstitutional. Only [Sheriff] Seabolt and the youngest, not promoted yet [Deputy] Harrelson testified about that "agreement." Which would be directly contrary to his counselor's advice, as oppression against the mentally ill is one of the largest punitive awards in a case.

(Id. (ellipsis in original).)

As with the magazine, Plaintiff does not explain how the absence of official-capacity claims impacted her ability to introduce whatever unspecified "evidence she ha[d] of October, 2024," regarding the disposition of these charges. (<u>Id.</u>)[9] Further, to the extent that Plaintiff disputes the accuracy of Sheriff Seabolt's testimony regarding the disposition of Plaintiff's charges,[10] she fails to present any evidence in support of her assertion that "[t]he charges were dismissed because the deputies did not show up, and the stop and seizure was unconstitutional" (<u>id.</u>). (<u>See</u> Docket Entries 74-76.)[11] Importantly, as the Court has already cautioned Plaintiff, "'an attorney's unsworn argument does not constitute evidence,' <u>United</u>

---

9  Because Plaintiff possessed this evidence prior to the trial, it — like the magazine — does not qualify as "new evidence" under Rule 59(e). <u>See, e.g.</u>, <u>Pacific Ins.</u>, 148 F.3d at 403 ("The Rule 59(e) motion may not be used to . . . present evidence that could have been raised prior to the entry of judgment." (internal quotation marks omitted)).

10  Plaintiff appears to contest the veracity of the rationale for the dismissal of the charges rather than suggest that she experienced any prejudice from the implication that she suffers from mental health issues.  Regardless, given that Plaintiff explicitly testified to her mental health issues — issues which the Reconsideration Memorandum repeatedly acknowledges (<u>see, e.g.</u>, <u>id.</u> at 7 (describing Plaintiff as "mentally ill"), 13 (same)) — any such argument would not justify relief.

11  To the extent that Plaintiff seeks a new trial based on allegedly false evidence (<u>see, e.g.</u>, Docket Entry 76 at 13 (asserting, without development, that trial contained "blatant falsehoods")), Plaintiff's failure to identify or otherwise provide evidence establishing such falsity (<u>see</u> Docket Entries 74-76) precludes such relief.

23

States v. White, 366 F.3d 291, 300 (4th Cir. 2004)." (Docket Entry 43 at 13; accord id. at 10 n.3.)

Finally, the Reconsideration Memorandum appears to suggest that the absence of official-capacity claims obliged Plaintiff to testify. For instance, the Reconsideration Memorandum states:

> [Deputy] Gabby testified, in [Plaintiff's counsel's] belief, *truthfully*. Had the official capacity claims survived, that would have mattered; because the jury would not have had to listen to testimony from a woman suffering from PTSD struggle to testify about her abusers, in front of her abusers, for the first time in five and a half years.

(Docket Entry 76 at 14.) The Reconsideration Memorandum further maintains:

> [Deputy] Gabby testified [that Plaintiff] was erratic, [Deputy] Short testified [that Plaintiff] was calm and did not respond. The person telling the truth, ironically, was [Deputy] Gabby. The person protecting [Plaintiff], *and* the department on the stand, was [Deputy] Short. The truth is, [Plaintiff] was being erratic, and was being odd after she was on the ground, she is an eggshell [p]laintiff. No attorney would subject [Plaintiff] to further character assassination, but [Plaintiff's counsel] was prepared to use it in the punitive stage, and prepared for them to bring it up. [Plaintiff] showed [Deputy] Gabby's truth on the stand, but showed [Deputy] Short's *kindness as an individual*, albeit *falsehood as an official* on the stand.

(Id. at 15-16.)

As with the magazine and dismissal evidence, Plaintiff fails to explain how the existence or non-existence of the official-capacity claims impacted the introduction of her testimony. (See id. at 14-16.) Moreover, regardless of the status of the official-capacity claims, Plaintiff could not have succeeded on her assault,

24

battery, and excessive-force claims without testifying to her version of events at trial. Accordingly, Plaintiff's contentions regarding her testimony miss the mark.

In sum, none of Plaintiff's contentions, whether policy, legal, or evidentiary, warrants Rule 59 relief.

<u>**CONCLUSION**</u>

Plaintiff fails to justify a new trial or reconsideration of the Judgment.

**IT IS THEREFORE ORDERED** that the Second Reconsideration Motion (Docket Entry 74) is **DENIED.**

This 7th day of April, 2025.

/s/ L. Patrick Auld

**L. Patrick Auld**
**United States Magistrate Judge**

25